**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
PEOPLE OF THE STATE OF NEW YORK,

                         Plaintiff,

                                                           **MEMORANDUM OF DECISION**
                                                           **AND ORDER**
                                                           13-CV-0428 (ADS) (GRB)

           - against -

JONATHAN K. SMITH,

                         Defendant,

----------------------------------------------------------X

**APPEARANCES:**

**New York State Department of Environmental Conservation**
**Division of Legal Affairs, Region 2**
*Attorneys for the Plaintiff*
47-40 21st Street
Long Island City, New York 11101
      By: John K. Urda, Esq., of counsel

**Moore International Law PLLC**
*Attorneys for the Defendant*
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
      By: Scott M. Moore, Esq., of counsel

**SPATT, District Judge.**

On January 24, 2013, the Defendant, Jonathan K. Smith, (the "Defendant"), removed this case to this Court pursuant to 28 U.S.C. §1443(1). Presently before the Court is a motion by the Plaintiff, the People of the State of New York, (the "People"), seeking to remand this action to its original forum, the Criminal Court of the Town of East Hampton, Suffolk County, New York. For the reasons that follow, the People's motion is granted.

# I. BACKGROUND

A. **Factual Background**

As the Defendant is the party seeking to invoke the subject matter jurisdiction of this Court, the burden of establishing jurisdiction rests upon it and the Court must view all facts in a light most favorable to the Plaintiff, the party seeking remand. Matsumura v. Benihana Nat'l. Corp., No. 06-CV-7609 (NRB), 2007 WL 1489758, at *2 (S.D.N.Y. May 21, 2007).

**1. The Incident in the Deli**

The Defendant is a member of the Shinnecock Indian Tribe and lives and works at the Shinnecock Indian Nation Reservation located within the Town of Southampton, Suffolk County, New York. The Defendant alleges that on June 11, 2012, one New York Department of Environmental Conservation Officer Maggio, whose full name is unknown, followed the captain of Smith's fishing boat, Theodore S. Lester, who is not a member of the Shinnecock Indian Nation, into Gabbyola's Deli. Lester walked into Gabbyola's Deli and was told by Officer Maggio, "I know you are running that boat. You are not allowed to touch anything, the net, or any of the gear. You cannot touch their fish. That is for the Indians. They can take that home. You cannot do that. You are going to end up in jail." It is not clear what occurred after this encounter.

**2. The Incident on Gerard Drive**

On November 21, 2012, Lieutenant Joseph C. Billotto stopped Lester, the fishing boat captain, and another one of the crewmembers from Smith's fishing boat while they were driving a car on Gerard Drive, near Accabonac Harbor, East Hampton Town, New York. The Defendant alleges that Billotto threatened Lester and the crewmember that he was going to put them in jail

for fishing and running the boat. Billotto said, "The Treaty is not worth Shitpaper," referring to the Fort Albany Treaty of 1664.

### 3. The Defendant Receives A Ticket

A few weeks later, on December 10, 2012, the Defendant was charged with possessing undersized bay scallops at the Montauk Marine Basin in violation of New York Law 130321 (2)(4). That same day, it is alleged that the Defendant, Captain Lester, and two members of the fishing crew were on the deck of Smith's fishing boat at its slip at the Montauk Marine Basin, Suffolk County. As they were leaving the boat, two New York Department of Environmental Conservation Officers ("ECOs") approached the men and one of them identified himself as Lieutenant Billotto. The second unidentified ECO did not speak but rather handed a ticket to Smith for possession of undersized scallops. It is now known that the unidentified ECO was Officer Brian Farrish. At that time, Lt. Billotto said he "wanted to come on board and check scallops." There were scallops on the boat in a container. Smith responded "no, this is an Indian boat registered to me, that's my car, and I'm going back home to the reservation." Smith showed his boat ownership and registration papers and his U.S. Bureau of Indian Affairs Identification Card to Lt. Billotto.

Smith then told his crew to remove the scallops from the boat and pack them. He then picked up the scallops and walked towards his car. At that point, Lt. Billotto motioned to his gun, "unsnapped his holster," and ordered Smith to put down the bag of scallops. Smith said that he had a choice to either put the bag down or return to the Reservation. Lt. Billotto told him he did not have a choice and that Smith should listen to him so things did not get "ugly." Smith then placed the bag down on the dock and the two ECOs removed the scallops from the bag and measured them. After measuring the scallops, Officer Farrish ticketed Smith for possession of

undersized scallops. Captain Lester was not ticketed. However, Lt. Billotto told all present that if he wanted to he could have given them all a ticket.

### 4. The Alleged Gunfire

A final incident allegedly occurred on January 11, 2013 at Jackson's Marina in the Town of Southampton. On that date it is alleged that an unknown individual shot twice at Captain Lester while he was on Smith's fishing boat. The first bullet hit the water and the second bullet hit Captain Lester's foot as he was getting off of the boat.

## B. Procedural History

On December 10, 2012, a ticket was written and handed to the Defendant by Officer Farrish of the New York Department of Environmental Conservation. The ticket alleged that the Defendant possessed eighty seven undersized bay scallops in violation of New York Law §130327(24), a misdemeanor. The Defendant removed the matter to this Court alleging civil rights violations of 42 U.S.C.§1982, 1985(3), and 1986. On February 22, 2013, the Plaintiff filed this motion to remand.

## II. DISCUSSION

### A. Legal Standard

"If, after removal, a plaintiff files a motion to remand, 'the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper.'" Forsythe v. Seiu, No. 10-CV-8557 (NRB), 2011 WL 2652395, at *2 (S.D.N.Y. June 23, 2011) (citing Hodges v. Demchuk, 866 F. Supp. 720, 732 (S.D.N.Y. 1994)). Removal is appropriate under 28 U.S.C. §1443(1) in cases where the defendant is "denied or cannot enforce in the courts of such State a right under any law providing for the equal rights of citizens of the United States." 28 U.S.C. §1443(1). However, of importance, removal is not appropriate simply

4

because the state has brought criminal charges against the defendant.  See Johnson v. Mississippi, 421 U.S. 213, 222, 86 S.Ct. 1800, 44 L.Ed.2d 121 (1975); See also New York v. Foster, No. 86-CV-7126, 1987 WL 5356, at *2 (S.D.N.Y. Jan. 7, 1987) ("A simple allegation of vindictive prosecution does not warrant removal of a state criminal prosecution to federal court."); New York v. El, No. 12-CV-4091 (KAM), 2012 WL 3861227, at *1, (E.D.N.Y. Sept. 3, 2012).  The Supreme Court has concluded that the language used in the predecessor statute to 28 U.S.C. §1443(1) – section 641 of the Revised statutes of 1874 – was intended to include "laws comparable in nature to the Civil Rights Act of 1866."  Georgia v. Rachel, 384 U.S. 780, 789-90, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966).  The Supreme Court has further concluded that the Civil Rights Act of 1866, "clearly indicates that Congress intended to protect a limited category of rights, specifically defined in terms of racial equality." Id. at 791.  As a result, the Supreme Court has held that the language in this particular removal section is understood to refer to "racial equality." Id. at 792.  Moreover, the denial of civil rights must be "manifest in the formal expression of state law." Chestnut v. New York, 370 F.2d 1, 6 (2d Cir. 1966).

That said, the requirements for removal under 28 U.S.C.§ 1443 are not satisfied by "broad generalizations or sweeping contentions under the Due Process Clause of the Fourteenth Amendment." Chestnut, 370 F.2d at 3. (quoting Georgia, 384 U.S. at 792).  To qualify for removal pursuant to 28 U.S.C.§ 1443(1), a defendant must satisfy a two-prong test.  See Johnson, 421 U.S. at 220.  First, the defendant must show that he or she was denied a federally protected civil right on racial grounds.  Second, the defendant must show that he or she was denied the opportunity to bring or enforce the specified federal civil rights in a state court.

Here, the Court finds that the Defendant has failed to state that Shinnecock fishing rights are a federally protected civil right under 28 U.S.C. §1443 or that the New York state court would deny him the ability to bring his civil rights claim in that court.

**B. The Defendant Fails to Meet the Two-Prong Requirement for Removal**

**1. As to Whether the Defendant Was Denied a Federally Protected Civil Right Based on Racial Equality**

As stated above, in order to have proper basis for removal, the defendant has to allege a civil rights violation in "terms of racial equality." El, 2012 WL 3861227, at *1; Rachel, 384 U.S. at 789-90 (concluding that the phrase in 28 U.S.C. §1443 (1), "any law providing for . . . equal civil rights" must be construed to mean any law providing for specific civil rights stated in terms of racial equality). It is not enough that the defendant establish that a federal civil right has been illegally denied by the state officials before trial; that the charges are false; or that the defendant cannot receive a fair trial in a particular state court. Rather, the defendant must show that the he or she is charged with "exactly that conduct which a federal law explicitly makes legal." Negron v. New York, No. 02-CV-1688, 2002 WL 1268001, at *1, (E.D.N.Y. April 1, 2002) (quoting New York v. Foster, No. 86-CV-7126, 1987 WL 5356, at *2 (S.D.N.Y. Jan. 7, 1987). Stated another way, removal is only available as a remedy when the defendant shows that there is a federal law that legalizes the activity of which he is charged in state criminal court. See Negron, 2002 WL 1268001, at *1.

In New York v. Leslie, No. 07-CV-2484 (NG)(LB), 2007 WL 1875554, at *1 (E.D.N.Y. June 27, 2007), the case was remanded to state court because, among other reasons, the defendant failed to allege that his criminal prosecution was based upon a New York law that denied him equal civil rights pursuant to 28 USC §1443(1). The defendant alleged that he was

6

being denied a right to a speedy trial, a right with no connection to racial equality. Similarly, in Negron, the defendant made a general claim that he was denied due process, equal protection under the law, and a fair trial. However, he did not allege that the government violated a federally protected civil right of racial equality. For that reason, the court remanded the criminal case back to state court.

Here, the Defendant alleges that the facts of his case are "race based." He also alleges that when one of the officers told the non-Indian fishing captain that he could not touch anything in the store, the officer effectively recognized the fishing rights of the Shinnecock Indians. Further, Lt. Billotto told the captain and crewmember the "treaty is not worth Shitpaper." According to the Defendant, the removal notice is pursuant to Sections 1982, 1985, and 1986, which are companion civil rights statutes to Section 1983 and fall under Georgia v. Rachel. The Defendant asserts that the People violated his federal right to purchase, hold, sell and convey his personal property – here, the scallops — on the basis of his membership in the Shinnecock Indian nation. The Defendant further asserts that he enjoys aboriginal rights with respect to scallops harvested in the Shinnecock Indian Reservation Land under the Free Trade Clause of the Fort Albany Treaty, 1964 and that he has fishing rights in Peconic Bay in the ceded territory under the Wyandanch to Ogden Deed of 1659.

However, the Court finds that the Defendant has not implicated a federal statute providing for racial equality as is necessary for removal under 28 U.S.C. 1443(1). See Negron, 2002 WL 1268001 at *1. First, the Defendant is an individual Indian attempting to sue under the Treaty of Fort Albany of 1664. This Treaty only secures rights to tribes and bands of Indians, and not individuals. See Bass v. Spitzer, 459 F. Supp. 2d 191, 196 (E.D.N.Y. 2006) (" . . . individual Indians lack standing to sue under the Treaty of Fort Albany of 1664 because that

7

Treaty secures rights for 'tribes and bands of Indians' rather than individuals."). The Wyandanch to Ogden Deed of 1659 is also inapplicable because "when an Indian tribe conveys ownership of its tribal lands to non-Indians, it loses any former right to absolute and exclusive use and occupation of the conveyed lands." South Dakota v. Bourland, 508 U.S. 679, 689, 113 S.Ct. 2309, 124 L.Ed.2d 606 (1993). In sum, the Defendant, as a Shinnecock Indian, fails to state a federally protected right to have undersized scallops. Moreover, even if such right existed, it does not implicate racial equality concerns.

## 2. As to Whether the Party Seeking Removal is denied from Enforcing a Federal Civil Right in State Court because of the State Regulation of Native Americans

In order to preserve this removal to federal court, the Defendant must allege that he would be precluded from enforcing his constitutional rights in state court. See El, 2012 WL 3861227 at *1. This provision of 28 U.S.C.§1443(1) requires that the "removal petitioner is 'denied or cannot enforce' the specified federal rights 'in the Courts of (the) State" and that this denial is "manifest in a formal expression of state law." New York v. Smith, No. 09-CV-2221 (DRH) (ARL), 2011 WL 2470065 at *2 (E.D.N.Y. June 17, 2011) (quoting Rachel, 384 U.S. at 799.) Under Section 1443, a defendant's federal rights are protected by the state courts unless the defendant can show that "by reason of the operation of a pervasive and explicit state or federal law . . . those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court." See Greenwood v. Peacock, 384 U.S. 808, 827, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). An assumption that the state will not protect the federally protected civil rights is not sufficient.

In this case, the Defendant contends that New York State's "Indian Laws"

8

and – specifically, Article 9 and Article 2 of Chapter 26 – illegally regulate the system of government and other affairs of the Shinnecock Indian Nation. The Defendant alleges that Article 9 illegally regulates his real property rights on the basis of his membership in the Shinnecock Indian Nation, a racial class of persons. The Defendant further alleges that Article 2 subjects him to taxation based upon his Indian racial status and whether he is a freeholder. The Defendant contends that Articles 2 and 9 violate his federal property rights protected under 42 U.S.C. §§ 1982, 1985, 1986.

In Chestnut v. New York, supra at 2, "a constitutional attack was made upon the provisions of a [New York] Judiciary Law upon the claim that the requirements that a grand juror be 'intelligent; of sound mind and good character; well informed,' resulted in a great majority of qualified [African-American] and Puerto Rican citizens and members of low income groups being excluded from jury service in violation of the Fourteenth and Fifteenth Amendments of the United States Constitution. The court there held that since the provisions of the [New York] Judiciary Law did not on their face discriminate in terms of race and the alleged denial of petitioner's civil rights [was] not 'manifest in the formal expression of state laws,' the petitioner's claim did not qualify under [28 U.S.C. §1443] for removal of pending state charges to the federal court for trial." People v. Ferguson, 55 Misc. 2d 711, 716 (1968) (discussing Chestnut, 370 F.2d at 1).

Furthermore, as to the Defendant's suggestion that the police officers used inappropriate force, the Supreme Court has held that even if the motives of the officers are corrupt, it does not follow that the state court could not enforce his constitutional rights. See Greenwood, 384 U.S. at 827.

Moreover, the Defendant only has an apprehension that his rights will not be recognized in state court and fails to state that his rights will actually be denied. See Rachel, 384 U.S. at 800. There is no allegation that either of the state statutes would deny the Defendant's constitutionally protected civil rights. Under these circumstances, removal would "operate to work a wholesale dislocation of the historic relationship between the state and the federal courts in the administration of the criminal law." Greenwood, 384 U.S. at 831.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff's motion to remand this case to State Court is granted: The Clerk is directed to mark the case as closed.

**SO ORDERED.**
Dated: Central Islip, New York
June 28, 2013

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge